IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CASEY D. SANDERS                                                                                    PLAINTIFF

V.                              Case No. 3:24-CV-00232-LPR-BBM

FRANK BISIGNANO, Commissioner,
Social Security Administration[1]                                                                   DEFENDANT

## **RECOMMENDED DISPOSITION**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within 14 days of the date of this Recommendation. If you do not file objections, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I.      INTRODUCTION

On November 4, 2021, then 45-year-old Plaintiff Casey D. Sanders ("Sanders") filed a Title XVI application for supplemental security income. (Tr. at 14). In the application, he alleged disability beginning on June 1, 2014. *Id*. The application was denied initially and on reconsideration. *Id*.

After conducting a hearing, an Administrative Law Judge ("ALJ") denied Sanders's

---

[1] On May 7, 2025, Frank Bisignano was sworn in as Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Bisignano is automatically substituted as the Defendant.

application on February 14, 2024. (Tr. at 14–24). The ALJ determined that Sanders had not been under a disability since November 4, 2021, the date the application was filed. (Tr. at 24).

On October 22, 2024, the Appeals Council denied Sanders's request for review of the ALJ's decision. (Tr. at 1–6). The ALJ's decision now stands as the final decision of the Commissioner, and Sanders has requested judicial review. For the reasons stated below, the Court recommends that the Commissioner's decision be affirmed.

## II.   THE COMMISSIONER'S DECISION

The ALJ found, at Step One, that Sanders has not engaged in substantial gainful activity since November 4, 2021, the application date.[2] (Tr. at 16). At Step Two, the ALJ determined that Sanders has the following severe impairments: history of left upper extremity injury, posttraumatic stress disorder ("PTSD"), anxiety, depression, and mild degenerative changes in the left shoulder and lumbar spine. *Id*.

At Step Three, the ALJ determined that Sanders's impairments did not meet or equal a Listing. (Tr. at 16–18). Next, the ALJ concluded that Sanders has the residual functional capacity ("RFC") to perform work at the light exertional level. (Tr. at 18). The ALJ found that Sanders can lift and carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; and stand/walk for six hours in an eight-hour workday. *Id*.

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

The ALJ imposed the following additional limitations: (1) Sanders can no more than occasionally reach overhead; (2) he cannot climb ropes, ladders, or scaffolding; (3) he can perform simple, routine, and repetitive tasks with an ability to make simple, work-related decisions; and (4) he can no more than occasionally interact with co-workers, supervisors, and the public. *Id*.

At Step Four, the ALJ relied upon testimony from a Vocational Expert ("VE") to find that Sanders is unable to perform any of his past relevant work. (Tr. at 23). Based upon additional VE testimony, the ALJ found, based on Sanders's age, education, work experience, and RFC, that there are jobs in the national economy that Sanders can perform. (Tr. at 23–24). Therefore, the ALJ concluded that Sanders was not disabled. *Id*.

### III.   DISCUSSION

#### A.   Standard of Review

"In reviewing the ALJ's decision," the Court "examine[s] whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950-51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however,

'merely because substantial evidence would have supported an opposite decision.'" *Reed*, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

**B.    Summary of Medical History**

As the ALJ noted, Sanders suffers from both mental and physical impairments. Sanders treated his anxiety and depression with medication. (Tr. at 17). He alleges that caring for his teenage son (who has a seizure disorder), and for his aging parents, added to his mental difficulties. (Tr. at 18). However, at multiple provider visits, Sanders had normal mental-status examinations. (Tr. at 17–18, 389–396). At a psychotherapy visit in February 2021, the provider noted that Sanders "was receptive to engaging in self-care to assist with decreasing stress and feeling overwhelmed." (Tr. at 394). His therapist wrote in April 2022 that Sanders continued to make good progress with self-understanding and self-insight. (Tr. at 436). "On July 29, 2022, treatment records noted that the claimant had situational anxiety related mainly to caregiving duties for his parents and son (Exhibit B7F/4)." (Tr. at 18).

Psychiatrist Dr. Thomas Walden, M.D., who had seen Sanders regularly since 2017,

offered a medical source statement on July 27, 2023. (Tr. at 21, 494–499). He stated that, due to anxiety, Sanders was not gainfully employable. *Id*. at 497. Sanders said that he was happy with his psychiatric treatment and that he could not work due to his responsibilities as caregiver for his son. (Tr. at 21, 396, 464).

Regarding Sanders's history of smoking and drug use, Sanders was diagnosed with opioid dependency. (Tr. at 19). In fact, from January 2018 to July 2020, Sanders was seen monthly for opioid dependence. *Id*. In March 2021, Sanders told his new physician at BRMC Family Clinic that he smoked a half pack of cigarettes per day and was not willing to quit, even though his doctor recommended that he do so. (Tr. at 20, 389–392).[3]

Turning to Sanders's physical complaints, Sanders was treating his pain with medication (Suboxone). (Tr. at 20). A 2021 physical examination by his primary care physician showed back pain with negative straight-leg raise. (Tr. at 20). Sanders had full range of motion and normal gait. His doctor encouraged exercise and weight loss to address Sanders's mild obesity. *Id*.; (Tr. at 389). In March 2019, X-rays of the left shoulder and lumbar spine showed mild degenerative changes. (Tr. at 19, 385). A consultative examiner saw Sanders on March 9, 2019, and opined that Sanders could sit, walk and/or stand for a full workday, and that he could lift/carry objects without limitations. (Tr. at 385). A note from Sanders's provider in May 2023 stated that Sanders "cannot work because caregiving requires 24/7 supervision." (Tr. at 417).

---

[3] Refusal to follow a prescribed course of treatment undercuts a claimant's allegations of disability. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997).

## C. Sanders's Arguments on Appeal

In his brief, Sanders contends that the evidence supporting the ALJ's decision is less than substantial. (Doc. 12 at 2–3). Specifically, he argues that: (1) the ALJ did not fully or appropriately evaluate Sanders's subjective complaints and alleged symptoms, (Doc. 12 at 3–7); (2) the ALJ did not consider all of Sanders's impairments in combination, *id.* at 7–9; (3) the ALJ failed to fully develop the record, *id.* at 9–11; and (4) the mental RFC did not incorporate all of Sanders's limitations, *id.* at 11–13.

### 1. Subjective Complaints

First, Sanders argues that the ALJ did not properly evaluate his statements about his symptoms or subjective complaints. (Doc. 12 at 3–7). The Court disagrees.[4]

In this case, the ALJ first discussed Sanders's activities of daily living. (Tr. at 17). Sanders said that he could take care of his son, ride in a car, take care of farm duties, go outside daily, and shop in stores. (Tr. at 17, 307–311).[5] The ALJ also discussed grossly normal mental status examinations. *Id*. He considered Sanders's conservative course of mental-health treatment. (Tr. at 17–18). Sanders's anxiety improved with simple therapeutic exercises. (Tr. at 392, 394–95). While Sanders emphasized that he cannot be

---

[4] "When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citations omitted). However, "[a]n ALJ need not explicitly discuss each factor[.]" *Id.* (citing *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011)). And a claimant's subjective allegations regarding pain "may be discounted by the ALJ if the evidence as a whole is inconsistent with the claimant's testimony." *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015) (citing *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006)).

[5] Such daily activities undermine his claims of disability. *Andrews*, 791 F.3d at 929; *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

around people due to anxiety, functional limitations must be supported by medical evidence and do not stand on a claimant's statements of symptoms alone. (Tr. at 67); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

The ALJ also considered the nature of Sanders's pain and the fact that x-rays of the shoulder and lumbar spine showed only mild degenerative changes. (Tr. at 19). The ALJ noted grossly normal musculoskeletal examinations. (Tr. at 19–21). Finally, the ALJ considered Sanders's own statements that he could lift 50 to 100 pounds and walk one mile (although Sanders testified at the hearing that he could walk 200–300 yards). (Tr. at 19, 50–51, 383). Moreover, no provider placed functional work restrictions on Sanders. And one provider said that Sanders could not work simply because he had to take care of his son. (Tr. at 417). The ALJ properly considered the totality of evidence related to Sanders's statements about his symptoms and subjective complaints. The ALJ properly found Sanders's statements about his symptoms and subjective complaints to be inconsistent with that evidence. The Court finds no error.

## 2. Impairments in Combination

Sanders next claims that the ALJ failed to evaluate fully his impairments in combination, namely his trouble sleeping related to anxiety and PTSD. (Doc. 12 at 7–9). But the ALJ thoroughly discussed Sanders's mental diagnoses and found anxiety and PTSD to be severe impairments. (Tr. at 16).[6] The ALJ also noted Sanders's positive

---

[6] As part of this argument, Sanders contends that he met Listing 12.06 for anxiety. (Doc. 12 at 7–9). The ALJ discussed Listing 12.06 and its requirements. (Tr. at 16–18); 20 C.F.R. Part 404, Subpart P, Appendix 1. At Step Three, the burden rests squarely on the claimant to prove he met a Listing. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). "The claimant must show that her impairment matches all of the specified medical criteria of a Listing." *Johnston v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

7

response to conservative therapies. (Tr. at 17–18, 389, 445, 457). And Sanders regularly denied sleep problems to his providers. (Tr. at 18–22, 425–428). No doctor opined that sleep issues would cause any functional restrictions. Medications helped with mental-health issues. (Tr. at 389). The ALJ properly considered all of Sanders's impairments in combination at Step Two. *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (ALJ noted that the evidence as a whole did not show claimant's symptoms would preclude all work and, thus, properly considered the combined effects of impairments). On this point, the ALJ did not err.

### 3. Development of the Record

For his argument that the ALJ failed to fully develop the record, Sanders cites mostly to his own subjective complaints. (Doc. 12 at 9–11). Again, subjective complaints alone do not provide a basis for a finding of disability. While Sanders also claims that the ALJ should have ordered another consultative examination because the one in evidence was from 2019, there was no pivotal issue in conflict that required further examination.[7]

---

Citing to relatively normal mental-status examinations and Sanders's ability to perform some daily activities (among other things), the ALJ found that Sanders has no more than mild-to-moderate limitations in the following four Listing 12.06 functional areas: 1) understanding, remembering, or applying information; 2) interacting with others; 3) maintaining concentration, persistence, and pace; and 4) adapting and managing himself. (Tr. at 16-18). Sanders also did not show that he had minimal capacity to adapt to changes in his environment or demands of daily life. Consequently, the requirements of Listing 12.06 were not met.

[7] An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving her disability; the ALJ does not have to play counsel for the claimant; and the ALJ's duty to develop is not never-ending. *Id.* The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011).

8

And the ALJ gave adequate reasons for discounting the 2019 consultative examination opinion. (Tr. at 19–22, 383–387) ("Dr. Battles' opinion is not persuasive because she gave the claimant no physical limitations, despite her diagnosis that he had chronic pain and some degenerative changes in his lumbar spine and left shoulder."). In fact, the ALJ found that Sanders had more limitations functionally than the consultative examiner found. (Tr. at 18). There was sufficient evidence in the record—including 2022 state-agency evaluations indicating that Sanders was not disabled—for the ALJ to make a well-supported finding on disability.[8]

As a final point: Sanders claims that the ALJ should have subpoenaed records from his treating psychiatrist, Dr. Walden. (Doc. 12 at 10). Specifically, Sanders's attorney told the ALJ at the hearing that he just found out about Sanders's mental limitations on that day, even though he had been on the case since 2021, and requested that the record be held open for an additional 30 days because Sanders had an *upcoming* appointment with Dr. Walden. (Tr. at 32–33). While Sanders claims that further development of the record was required, the ALJ properly found this argument untimely and unavailing. (Tr. at 33) ("Due to the longevity of the relationship, I'm not going to keep it open for records that are not even in existence, that are not even in the pipeline. My interpretation of that rule is that records are in existence, they're just not in possession and not for records occurring in the future."). And again, the record shows that Sanders is not as limited as he alleges.

---

[8] Notably, the ALJ imposed an RFC more restrictive than the mild functional restrictions assessed by the state-agency doctors. (Tr. at 18, 106–124).

9

### 4. Mental RFC

Sanders makes a concluding argument that suggests the mental RFC did not sufficiently incorporate all of his mental limitations. (Doc. 12 at 11–13).[9] He asserts generally that mental illness is unpredictable and that periods of relapse are to be expected. *Id.* Based on this argument, Sanders claims that he is disabled, and he says that because of his mental illness, the jobs identified by the VE were merely conceivable and not actually possible.[10] The evidence, however, shows that Sanders responded well to conservative therapies, like deep breathing, and he said that therapy was helpful. (Tr. at 389–396). His doctor also noted that nothing medical prevented Sanders from working; his round-the-clock care of his son prevented Sanders from working. (Tr. at 417).[11] Finally, the ALJ *did* assign an RFC for simple work with occasional interaction with others, indicating that the ALJ considered that mental impairments might be limiting in a work setting. (Tr. at 18). The RFC adequately incorporated Sanders's mental and physical limitations.[12]

---

[9] "A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence." *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (citation omitted). "In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments." *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996) (citing *Vaughn v. Heckler,* 741 F.2d 177, 179 (8th Cir. 1984)). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

[10] Sanders offers no support for his claim that the jobs were not possible. In any event, the ALJ may properly rely on VE testimony about available jobs and their requirements. *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011). The VE is the qualified expert in that area, not Sanders's attorney, and the attorney did not support his claims with any vocational or occupational evidence.

[11] Although Sanders says there is some confusion about how much he has to do to care for his son, his mother (whom Sanders sees every day) stated that Sanders has to care for his son 24/7 and do virtually everything for him. (Tr. at 296–297).

[12] Sanders argues that the ALJ erred in finding that Sanders could engage in gainful employment

## IV.  CONCLUSION

There is substantial evidence to support the Commissioner's decision that Sanders was not disabled. The ALJ properly considered Sanders's subjective complaints, he considered all of Sanders's impairments in combination, the record was fully developed, and the RFC incorporated all of Sanders's physical and mental limitations.

IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's decision be AFFIRMED.

2. Judgment be entered for the Defendant.

DATED this 18th day of August, 2025.

*[signature: Benecia Moore]*
UNITED STATES MAGISTRATE JUDGE

---

without also taking into consideration the combined effects of all physical and mental limitations. (Doc. 12 at 13). But again, in this case, the ALJ did properly consider the combined effects all impairments. *See Hajek*, 30 F.3d at 92.